**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN INSTITUTE OF CHEMICAL ENGINEERS,
   120 Wall Street, Floor 23,
   New York, NY 10005,

KARPMAN CONSULTING, LLC
   91 Jerry Daniels Rd.,
   Marlborough, CT 06447,

PROTON ENERGY SYSTEMS, INC. (d/b/a NEL
HYDROGEN US),
   10 Technology Drive
   Wallingford, CT 06492,

RCAM TECHNOLOGIES, INC.,
   5490 Tenino Ave.,
   Boulder, CO 80303,

        *Plaintiffs*,

      v.

CHRISTOPHER WRIGHT, in his official capacity as
Secretary of Energy,
   1000 Independence Ave., SW,
   Washington, DC 20595,

UNITED STATES DEPARTMENT OF ENERGY,
   1000 Independence Ave., SW,
   Washington, DC 20595,

RUSSELL VOUGHT, in his official capacity as Director of the
Office of Management and Budget,
   725 17th Street NW,
   Washington, DC 20503,

OFFICE OF MANAGEMENT AND BUDGET,
   725 17th Street NW,
   Washington, DC 20503,

        *Defendants*.

Civil Action No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      "Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." *Romer v. Evans*, 517 U.S. 620, 633 (1996).

2.      In *City of Saint Paul v. Wright*, No. 25-cv-3899, 2026 WL 88193 (D.D.C. Jan. 12, 2026), this Court held that the Department of Energy (DOE) and the Office of Management and Budget (OMB) violated this fundamental American principle by targeting DOE grants to terminate based on whether a grantee resided in a state that votes for Democratic candidates in statewide elections ("Blue States").

3.      That the government terminated grants on this basis was so inconvertible that the government did not contest it—the government conceded that partisan voting patterns of a grantee's home state was a "primary reason" for why several hundred DOE grants in Blue States were terminated while several hundred other grants to awardees in Red States were not. And although the government stipulated that this was a "primary" reason for the different treatment, the government did not proffer any other reason for the differential treatment. The government also admitted that the terminated grants were "comparable" to grants to recipients in Red States that were not terminated.

4.      Even without the government's concession, the intentional discrimination underlying the terminations is plain. In the run-up to the government shutdown in October 2025, the President made clear that, in the event of a shutdown, his administration would take punitive action against states whose citizens vote for the opposition political party. Then, on the first day of the shutdown, the OMB Director Defendant Russell Vought announced on X:

Russ Vought ✔️ ▪️

@russvought

Nearly $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled. More info to come from @ENERGY.

The projects are in the following states: CA, CO, CT, DE, HI, IL, MD, MA, MN, NH, NJ, NM, NY, OR, VT, WA

2:09 PM · Oct 1, 2025 · **6.1M** Views

5.    In all sixteen states listed by Vought where projects were terminated, the citizens of that state voted for Vice President Harris over President Trump in the 2024 election. And in all sixteen states, the citizens of that state currently have elected two Senators who caucus with the Democratic party. Vought's post thus openly flaunted that, in terminating DOE awards, the administration targeted states associated with the opposition party.

6.    In total, DOE terminated 314 awards to U.S.-based recipients in early October 2025, and for all 314 awards—100%—the grantee's address on file with the federal government is a state that voted for Vice President Harris in the 2024 election and that has two Democratic-caucusing Senators. One need not be a statistician to understand this partisan skew did not happen by chance.

7.    Plaintiffs in this action are among the grantees that were victims of this discrimination. Their awards were set to deliver substantial benefits for communities and people across the country. Among other benefits, their projects aimed to make buildings more energy efficient and streamlining the permitting process, advance clean solar and hydrogen technologies, and help companies reclaim critical minerals and materials used in the manufacturing process. Some Plaintiffs are early-stage businesses for whom their DOE grants were existential to their companies. Every Plaintiff did nothing wrong other than being located in

3

a state whose citizens vote for the political party that the current government disfavors. The equal protection guarantee of the Fifth Amendment does not countenance Defendants' conduct; partisan discrimination and retribution are not a rational basis for differentiating between similarly situated federal grantees.

8. The Executive Branch's wielding of federal funds as a cudgel for partisan discrimination is unconstitutional and sets a dangerous precedent for the trillions of dollars that the Executive Branch dispenses each year. It cannot be left to stand.

**PARTIES**

9. Plaintiff American Institute of Chemical Engineers is the world's leading organization for chemical engineering professionals, with more than 50,000 members from more than 110 countries.

10. Plaintiff Karpman Consulting, LLC is a small, woman-owned engineering firm. Since its founding in 2005, its focus has been to promote energy efficiency in buildings by providing research, training, technical assistance, and consulting to public and private sector clients.

11. Plaintiff Proton Energy Systems, Inc. (d/b/a Nel Hydrogen US) is a leading hydrogen technology company, specializing in PEM and Alkaline electrolyser technology for production of renewable hydrogen. Its product offerings help enable a green hydrogen economy, making it possible to decarbonize various industries such as transportation, refining, steel, and ammonia. In 2017, Nel Hydrogen acquired Proton Energy Systems, Inc., a Connecticut-based hydrogen technology company.

12. Plaintiff RCAM Technologies, Inc. designs and manufactures structural systems for energy projects in aquatic environments. Its products include anchors for floating solar

plants, fixed-bottom foundations, canal solar solutions, innovative subsea energy storage technologies, and floating dry docks.

13.    Defendant Christopher Wright is the Secretary of Energy and is sued in his official capacity.

14.    Defendant Department of Energy (DOE) is an agency of the United States government.

15.    Defendant Russell Vought is the Director of the Office of Management and Budget and is sued in his official capacity.

16.    Defendant Office of Management and Budget (OMB) is a federal agency within the Executive Office of the President.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, including the U.S. Constitution.

18.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies and officials acting in their official capacities; at least one defendant is located in this district; and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

*DOE Awards Billions in Funding Through Congressionally Mandated Programs*

19.    DOE carries out a vast number of programs, many prescribed by statute, through grants and cooperative agreements with private parties and state and local governments. Congress annually appropriates funds for these purposes, and has also appropriated tens of billions of dollars for such awards in legislation including the Infrastructure Investment and Jobs

Act (IIJA) of 2021 and the Inflation Reduction Act of 2022. In the IIJA, for instance, large bipartisan majorities of Congress appropriated $62 billion to DOE to carry out projects advancing energy efficiency, affordability, resiliency, and independence, among other purposes.

20.    Congress appropriates funds to specific offices within DOE to carry out programs. As relevant here, in the IIJA and recent annual appropriations bills, Congress appropriated substantial funds to the Office of Energy Efficiency and Renewable Energy (EERE). Until a recent DOE reorganization, EERE was "responsible for renewable energy and end-use energy efficiency technology development," including "issuing grants for home energy efficiency and state energy planning, establishing minimum energy conservation standards for appliances and equipment, and providing technical support."[1] EERE received $16.3 billion in appropriations through the IIJA, as well as $3.5 billion in funding for each of fiscal years 2024 and 2025.

21.    Plaintiffs all received awards from EERE.

22.    The American Institute of Chemical Engineers (AIChE) received a $49.8 million award from EERE, consisting of $36.5 million in government share and $13.2 in AIChE's cost share. The award was to support AIChE's project, "H2CIRC: Circular Recycling for the Hydrogen Economy." The project's goal was to develop commercially viable processes to reclaim critical minerals and materials from manufactured electrolyzers and fuel cells. This award was on the list of DOE awards terminated in early October 2025. AIChE received a termination notice from DOE on October 2.

23.    Karpman Consulting received two awards from EERE. The first was for $2.1 million to streamline commercial energy code enforcement by developing and implementing

---

[1] Martin C. Offutt & Lexie Ryan, Cong. Rsch. Serv., IF 13118, *DOE Energy Efficiency and Renewable Energy (EERE) Appropriations, FY 2026* (2025).

automated processes using a performance-based approach and building energy modeling software to demonstrate compliance. The second was for $4.7 million ($4 million government share and $692,212 cost share) to support automation of American Society of Heating, Refrigerating and Air Conditioning Engineers (ASHRAE) Standard 90.1 energy modeling requirements in software tools used to demonstrate energy code compliance of commercial and multifamily building projects. Both of Karpman Consulting's awards were on the list of DOE awards terminated in early October 2025. Karpman Consulting received termination notices from DOE on October 2 and then received superseding termination notices on October 9, making the effective date of the terminations October 9, 2025.

24.     Proton Energy Systems Inc. (now owned by Nel) received a $6.1 million award ($4.9 million government share and $1.2 million cost share) to support its project, "Low-Cost, Clean AEM Electrolysis through Transport Property Understanding, Manufacturing Scale-up, and Optimization of Electrodes and their Interfaces." The project was designed to reduce the cost of hydrogen produced through electrolysis to $2 / kg by 2026, which would help make this technology competitive with natural gas derived hydrogen. This award was on the list of DOE awards terminated in October 2025. Nel received a termination notice from DOE on October 2 and then received a superseding termination notice.

25.     RCAM Technologies, Inc. received a $2.5 million award ($2 million government share and $500,000 cost share) to support its project, "A Versatile Additive Manufacturing Platform for Fabricating Low-Cost, Concrete Offshore Wind Support Structures in American Ports." The project was to help design a 3D-printed concrete suction anchor for use in a variety of offshore energy applications. RCAM Technologies received a termination notice from DOE

on October 2 and then received a superseding termination notice on October 9, making the effective date of the termination October 9, 2025.

26.     The DOE awards that Plaintiffs received and had terminated in October 2025 (the "Challenged Terminations") are summarized in the following table:

| Award Description | Number | Awardee | Awardee Location and Place of Performance | Total Amount |
|---|---|---|---|---|
| H2CIRC: Circular Recycling for the Hydrogen Economy | EE0011338 | American Institute of Chemical Engineers | New York | $49.8 million |
| Automation of Performance-based Compliance Quality Control and Reporting | EE0010949 | Karpman Consulting | Connecticut | $2.1 million |
| Validated Automation of 90.1 PRM and S-PRM in Commonly Used Simulation Tools | EE0011557 | Karpman Consulting | Connecticut | $4.7 million |
| Low-Cost, Clean AEM Electrolysis through Transport Property Understanding, Manufacturing Scale-up, and Optimization of Electrodes and Their Inter | EE0011326 | Proton Energy Systems Inc. (now owned by Nel) | Connecticut | $6.1 million |
| A Versatile Additive Manufacturing Platform for Fabricating Low-Cost, Concrete Offshore Wind Support Structures in American Ports | EE0011010 | RCAM Technologies Inc. | Colorado | $2.5 million |

***DOE Terminates Funding to Recipients Exclusively in "Blue" States***

27.     On May 15, 2025, Secretary Wright announced that DOE had been conducting a "review" of financial assistance awards issued under the prior administration. A press release stated that Wright had "concern[s]" about certain awards issued by the prior administration, but

did not specify the awards or further explain his concerns.[2] Wright stated that DOE would conduct a "focused review[]" for certain awards "on a case-by-case basis."[3]

28.    In the days and weeks leading up to a possible lapse in appropriations at the end of September 2025, President Trump threatened to retaliate against congressional Democrats and their voters should they not agree to fund the government on the President's terms. For instance, on September 30, President Trump told reporters: "We can do things during the shutdown that are irreversible, that are bad for them and irreversible by them, like cutting vast numbers of people out, cutting things that they like, cutting programs that they like."[4]

29.    Similarly, after the shutdown had begun, President Trump posted to Truth Social that he had a meeting with OMB Director Vought, the Director of the Office of Management and Budget, to "determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut, and whether or not those cuts will be temporary or permanent."[5] President Trump continued: "I can't believe the Radical Left Democrats gave me this unprecedented opportunity."[6]

30.    In meetings and interviews throughout the shutdown, President Trump openly and proudly confirmed his administration's intent to target perceived Democratic interests and

---

[2] DOE, *Secretary Wright Announces New Policy for Increasing Accountability, Identifying Wasteful Spending of Taxpayer Dollars*, May 15, 2025, https://www.energy.gov/articles/secretary-wright-announces-new-policy-increasing-accountability-identifying-wasteful.
[3] *Id.*
[4] Ricard Cowan, et al., *Trump Warns Democrats of "Irreversible" Actions in Government Shutdown*, Yahoo News (Sept. 30, 2025), https://perma.cc/UVV3-MXKS.
[5] @realDonaldTrump, https://truthsocial.com/@realDonaldTrump/posts/115304455138824245.
[6] *Id.*

priorities. During a cabinet meeting on October 9, the President stated that his administration was "only cutting Democrat programs."[7]

31.     Consistent with the President's wishes, on October 1, the very first day of the shutdown, Defendants targeted DOE grants in states that voted for Vice President Harris in the 2024 presidential election. That day, it was not DOE or Secretary Wright that announced the terminations, but rather OMB Director Vought. Vought posted on X: "Nearly $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled. More info to come from @ENERGY."[8] Vought then highlighted that the "[t]he projects are in the following states: CA, CO, CT, DE, HI, IL, MD, MA, MN, NH, NJ, NM, NY, OR, VT, WA."[9]

32.     On October 2, Wright announced that DOE was terminating 321 awards, spanning 223 projects, for which the agency had previously awarded $7.5 billion.[10] The vast majority of projects were funded by DOE's Office of Energy Efficiency and Renewable Energy, Office of Clean Energy Demonstrations, and Office of Fossil Energy.

33.     DOE's press release asserted that these projects "did not adequately advance the nation's energy needs, were not economically viable, and would not provide a positive return on investment of taxpayer dollars."[11] But the release contained no specifics to support those assertions or identification of the awards that were terminated.

***Data Further Confirms That Defendants Targeted Awards in Blue States***

34.     The data unmistakably confirms that Defendants targeted DOE grants for

---

[7] Kevin Breuninger, *Trump Threatens to Use Government Shutdown to Cut "Popular Democrat Programs*," CNBC (Oct. 9, 2025), https://perma.cc/KZ69-5DGG.
[8] @RussVought, https://x.com/russvought/status/1973450301236715838.
[9] *Id.*
[10] DOE, *Energy Department Announces Termination of 223 Projects, Saving Over $7.5 Billion* (Oct. 2, 2025), https://perma.cc/WV7Q-QWA5.
[11] *Id.*

termination in October 2025 based on the political views of the citizens of the state associated with the grant.

35.     On information and belief, on or around October 1, 2025, Defendants transmitted to members of Congress a list of the 321 awards slated for termination that Secretary Wright was referencing. That list was made public in various news reports, and Defendants did not deny its authenticity in the *City of Saint Paul* case..[12]

36.     The website usaspending.gov contains authoritative information on every grant awarded by DOE and other agencies, including the address on file of each awardee and the primary place of performance of each award.

37.     The list of 321 awards contained six awards that had been previously terminated earlier in 2025, leaving 315 awards newly terminated in October 2025. Of those, one award was to an entity located in Canada. For each and every one of the 314 awards to U.S.-based grantees, the grantee had an address on file in a state that voted for Vice President Harris and currently has two Democratic-caucusing Senators.

38.     In addition, the primary place of performance for 308 of the 315 awards (*i.e.*, 98%) was a state that voted for Vice President Harris and has two Democratic-caucusing Senators.

39.     Each Plaintiff initially received a termination notice that was not on official DOE letterhead, but rather simply displayed "UNITED STATES DEPARTMENT OF ENERGY" at the top of the page. Over the following few weeks, DOE issued—without explanation— superseding termination letters, which were substantially identical to the original ones except

---

[12] *See, e.g.*, Maeve Allsup, *Scoop: These Are the 321 Awards DOE Is Canceling*, Latitude Media (Oct. 2, 2025), https://perma.cc/B9F7-483X.

that they were on official letterhead, were signed by different DOE officials, and changed each termination's effective date to the date of the second letter.

40.     The termination notices to grantees were all nearly identical form letters that the relevant grantee's project "no longer effectuates program goals regarding feasibility due to a shift in the Department of Energy's priorities" or that the project "does not effectuate the Department of Energy's priorities of ensuring affordable, reliable, and abundant energy to meet growing demand and/or addresses [sic] the national emergency declared pursuant to Executive Order 14156." The termination notices did not suggest that the awardees failed to comply with the terms and conditions of the award or that they were deficient in their performance in any manner. On information and belief, all funding recipients whose awards were terminated received substantially similar notices stating that their projects were terminated solely due to a shift in agency priorities.

41.     According to public reporting, DOE had originally sent a broader list of more than 600 awards to OMB for potential termination.[13] The broader list included awards to grantees based in states throughout the country, including Arizona, Indiana, Florida, Ohio, Louisiana, North Carolina, North Dakota, Oklahoma, South Carolina, Tennessee, Texas, Utah, West Virginia, and Wisconsin—all of which voted for President Trump in the 2024 election.[14] But Defendants did not terminate *any* awards to grantees located in those states in October 2025. Instead, according to one energy lobbyist (and as the evidence demonstrates), "they basically just pulled out most, if not all, blue state projects, and that's what they announced as cuts."[15]

---

[13] Brian Dabbs, et al., *DOE Floats New Cuts to Hundreds of Clean Energy Grants*, E&E News (Oct. 7, 2025), https://perma.cc/5B76-VGQP.
[14] List of Awards, https://perma.cc/GA87-D96M.
[15] Dabbs, *supra* note 14.

42.     Even in programs where awards were made across all 50 states, such as the Grid Resilience and Innovation Partnership program, only projects in states that voted for Vice President Harris were cancelled in October 2025, while similar projects in states that voted for President Trump were not.

43.     DOE terminated 79 projects in California alone, totaling more than $2 billion in federal funding. One of the projects would have provided backup battery power for a children's hospital in Madera, California.

44.     DOE's October termination of awards in states that voted against the President was a part of the administration's broader efforts to harm such states since the shutdown. As of October 14, the administration had "frozen or canceled nearly $28 billion that had been reserved for more than 200 projects primarily located in Democratic-led cities, congressional districts, and states."[16] An analysis by the New York Times showed that the vast majority of funding cuts during the shutdown have been to grantees in states—and even congressional districts—that have recently voted for Democrats, especially in New York, California, and Chicago.[17]

---

[16] Tony Romm & Lazaro Gamio, *Trump Targets Democratic Districts by Halting Billions During Shutdown*, N.Y. Times (Oct. 14, 2025), https://www.nytimes.com/interactive/2025/10/14/us/trump-grants-democrat-districts-government-shutdown.html
[17] *Id.*



**Total affected funding, by congressional district**

Note: Grants are grouped by the congressional district of the grant recipient. The work funded by the grant could occur in the same district, a different district, or across multiple districts and states.

45.    These cuts included a freeze of $18 billion in funding for two major New York City infrastructure projects: the Second Avenue subway and Hudson River tunnel. The administration also froze $2.1 billion that had been pledged to Chicago for transit upgrades, including an extension of its rail system into the South Side.

***Defendants Concede That They Terminated Awards Because They Were Located in Blue States, and a Federal Court Vacates Those Award Terminations***

46.    On November 10, 2025, a group of six DOE awardees filed a complaint asserting that DOE terminated awards because they were located in Blue states. *See City of Saint Paul v. Wright*, No. 25-cv-3899, 2026 WL 88193 (D.D.C. Jan. 12, 2026). The plaintiffs brought claims under the Fifth Amendment's equal protection guarantee and the First Amendment. Shortly thereafter, the plaintiffs moved for a preliminary injunction and consolidation under Federal Rule of Civil Procedure 65(a)(2).

47.     In responding to the *Saint Paul* plaintiffs' motion, Defendants did not contest that they terminated awards because grantees were located in Blue states. To the contrary, Defendants expressly stipulated that (i) the terminated awards were "comparable to certain other [DOE] awards that . . . are to prime awardees not in Blue States . . . and . . . did not receive letters terminating their awards in October 2025" and (ii) a "primary reason for the selection of which DOE grant termination decisions were included in the October 2025 notice tranche was whether the grantee was located in a 'Blue State.'" Stipulation at 1–2, *Saint Paul*, No. 25-cv-3899 (D.D.C. Dec. 23, 2025), Dkt. 27.[18] Defendants also represented that "it would be [legally] sufficient for equal protection purposes to find that a primary reason for the . . . termination decisions at issue . . . is because of location in blue states." *Saint Paul*, 2025 WL 88193, at *5 (alterations in original) (quoting transcripts of court hearings).

48.     On January 12, 2026, the district court entered judgment in favor of Plaintiffs on their Fifth Amendment equal protection claim. *Id.* at *1. The court held that the classification Defendants drew—terminating awards in Blue States but not in Red States—was not "rationally related" to any legitimate government purpose. *Id.* at *5. As the court explained, there was "no reason to believe that terminating an award to a recipient located in a state whose citizens tend to vote for Democratic candidates—and, particularly, voted against President Trump—furthers the agency's energy priorities any more than terminating a similar grant of a recipient in a state whose citizens tend to vote for Republican candidates or voted for President Trump." *Id.*

49.     The court accordingly entered judgment in favor of the plaintiffs on their equal protection claim and vacated the October termination notices as to the seven awards at issue in

_____

[18] Defendants stated that they made the stipulation "[s]olely for the purposes of the [*Saint Paul*] litigation and for no other purpose" and only as to the seven awards at issue in *Saint Paul*. *See id.*

the case. [19] The court directed the parties to file supplemental briefing on the plaintiffs' request for prospective injunctive relief, which remains pending.

## FIRST CLAIM FOR RELIEF

### Violation of the Fifth Amendment's Equal Protection Guarantee

50.     Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs.

51.     The Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954).

52.     In identifying DOE grants to terminate in October 2025, Defendants intentionally treated Plaintiffs differently from similarly situated entities based on the political views of, and votes cast by, the citizens of the state where the prime grantee was located, and the state where the relevant award would be primarily performed.

53.     Defendants' reasons for treating Plaintiffs differently from similarly situated entities are arbitrary and irrational.

54.     Defendants' differential treatment of Plaintiffs is motivated by animus against the political views of and votes cast by the citizens of the states associated with the awards, based on the location of the prime grantee or where the award would be performed.

55.     Defendants lack any legitimate government interest in terminating Plaintiffs' grants. Even if Defendants could identify a hypothetical legitimate government interest, the targeting of Plaintiffs' grants for termination—but not similarly situated grants to recipients in Red States—is not rationally related to any such legitimate state interest.

---

[19] The court also held that the *Saint Paul* plaintiffs lacked standing to challenge Defendants' actions on First Amendment grounds. *See id.* at *7–8.

16

56.     As a direct and proximate result of Defendants' differential treatment, Plaintiffs have suffered concrete economic and non-economic harm, including loss of funding, loss of funding opportunities, loss of access to federally funded programs and resources, loss of investments, costs of mitigation, diversion of resources, reputational harm, and chilled association.

57.     Through the actions above, Defendants have violated the Due Process Clause of the Fifth Amendment.

## REQUEST FOR RELIEF

**NOW, THEREFORE,** Plaintiffs request judgment in their favor against Defendants as follows:

1.     Declare that the Challenged Terminations were unlawful, in violation of the Fifth Amendment's Due Process Clause.

2.     Enjoin the Challenged Terminations.

3.     Enjoin Defendants to restore the awards terminated pursuant to the Challenged Terminations.

4.     Award Plaintiffs reasonable costs and attorneys' fees; and

5.     Award such other relief as this Court may deem just and proper.

Dated: March 30, 2026                          Respectfully submitted,

                                               */s/ Daniel F. Jacobson*
                                               Daniel F. Jacobson (D.C. Bar 1016621)
                                               Stephen K. Wirth (D.C. Bar 1034038)
                                               John Robinson (D.C. Bar 1044072)
                                               JACOBSON LAWYERS GROUP PLLC
                                               5100 Wisconsin Ave. NW, Suite 301
                                               Washington, DC 20016

Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs*